UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY MARCHBANKS,

        Petitioner,

                                    Case No. 1:06-cv-269
v.                                  Hon. Gordon J. Quist

KURT JONES,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    **I.**        **Background**

        A jury convicted petitioner of three counts of first-degree criminal sexual conduct (CSC I), M.C.L. § 750.520b(1)(a) and three counts of second-degree criminal sexual conduct (CSC II), M.C.L. § 750.520c(1)(a). *People v. Gary E. Marchbanks*, No. 252186 (Mich. App. Feb. 22, 2005). Defendants' convictions arose from acts he perpetrated on his daughter, which the Michigan Court of Appeals summarized as follows:

> Defendant forced his own daughter when she was merely ten years old to strip and get into graphic poses while he took pictures, which he stated he was going to sell on the internet. Furthermore, in order to make the photographs more explicit, defendant manipulated his daughter's buttocks and genitalia. Each of these instances of sexual abuse involved multiple pictures, in multiple poses, with at least two separate manipulations of the victim's privates.

*Marchbanks*, No. 252186, slip op. at 3.  Petitioner was sentenced to a term of 18 to 50 years imprisonment for the CSC I convictions and 10 to 15 years for the CSC II convictions, with the sentences to run concurrently.  Petition at ¶ 4 (docket no. 1).[1]

Petitioner, through counsel, raised five issues in his direct appeal to the Michigan Court of Appeals:

I.   Defense counsel was ineffective for the reason that counsel did not object at trial to damaging hearsay testimony that corroborated [the] victim's allegations.

II.   The evidence provided at trial was insufficient to warrant [petitioner's] convictions on six counts of criminal sexual conduct and must be reversed.

III.   It was an abuse of discretion for the court to determine that testimony concerning thumb identification by an expert witness was admissible where there is no recognized scientific, technical or specialized knowledge relating to thumb identification and the testimony was not the product of reliable principles and methods which were applied to the facts of this case, contrary to MRE 702.

IV.   It was error for the trial court to deny [petitioner's] motions for discovery and production of records where the prosecutor had unreasonably withheld potentially exculpatory evidence.

V.   The court abused its discretion in exceeding the guidelines and sentencing [petitioner] to 18 years to 50 years for three counts of CSC 1st degree and 10 years to 15 years for three counts of CSC 2nd degree for the reason that the guidelines did not adequately consider the number and severity of [petitioner's] convictions.

*See* Brief on Appeal (docket no. 32).

Petitioner also filed a pro se supplemental brief raising the following issue:

---

[1] These convictions occurred at a re-trial.  Petitioner's first trial ended in a hung jury, and a mistrial was declared on April 4, 2003.  *See* Excerpt of proceedings at 8-10 (docket no. 21).

> VI.  Was [petitioner] denied his right to a fair trial by the admission and use of "other act" evidence on rebuttal, after defense rested?

*Id.* The Michigan Court of Appeals affirmed the conviction. *Marchbanks*, No. 252186.

Petitioner raised four issues (including two sub-issues) in his application for leave to appeal to the Michigan Supreme Court:

> I.  Defense counsel was ineffective for the reason that counsel did not object at trial to damaging hearsay testimony, and appellate counsel was ineffective for failing to cite authority that supported [petitioner's] argument, which forced the Court of Appeals to rule that [petitioner] abandoned his issue on appeal.
>
> > A.  [Petitioner] was denied the effective assistance of appellate counsel, where counsel's cursory treatment of [petitioner's] issue forced the Court of Appeals to rule [that petitioner] abandoned his claim on appeal.
>
> II.  It was an abuse of discretion for the court to determine that testimony concerning thumb identification by an expert witness was admissible where there is no recognized scientific, technical or specialized knowledge relating to thumb identification and the testimony was not the product of reliable principles and methods which were applied to the facts of this case, contrary to MRE 702.  And the Court of Appeals ruling was contrary to clearly established Supreme Court precedent and this issue should be reviewed as an issue of first impression.
>
> III.  It was error for the trial court to deny [petitioner's] motions for discovery and production of records where the prosecutor had purposely withheld potentially exculpatory evidence and appellate counsel was ineffective for failing to cite authority that supported [petitioner's] argument, which forced the Court of Appeals to rule that [petitioner] abandoned his issue on appeal.
>
> > A.  [Petitioner] was denied the effective assistance of appellate counsel, where counsel's cursory treatment of [petitioner's] issue forced the Court of Appeals to rule [that petitioner] abandoned his claim on appeal.
>
> IV.  [Petitioner] was denied his right to a fair trial by the admission and use of "other act" evidence on rebuttal, after defense rested, and the

3

> Court of Appeals opinion in denying [petitioner's] argument was
> clearly contrary to clearly established State and Federal law.

Application for leave to appeal (docket no. 33).  The Michigan Supreme Court denied the
application.  *People v. Marchbanks,* No. 128426 (Mich. Aug. 30, 2005).

On December 30, 2005, Marchbanks filed a petition for writ of habeas corpus seeking
habeas review pursuant to § 2254.  *Marchbanks v. Jone*s, No. 1:05-cv-859 (W.D. Mich.)
("*Marchbanks I*").  The court rejected the petition and ordered petitioner to file an amended petition
on the court's form.  *See  Marchbanks I* (docket no. 3).  On February 7, 2006, Marchbanks filed an
amended petition setting forth the following claims:

I.  Ineffective assistance of counsel as guaranteed by the Sixth
Amendment.

Defense Counsel failed to object to damaging hearsay testimony by
no less than four people.  These statements were supposedly about a
conversation between [complainant] and the four testifying
[witnesses] four to five months after the [alleged] crime.

II.  During trial, petitioner objected to expert testimony brought by the
prosecution witness Norman Saur which denied Due Process as
guaranteed by the Fourteenth Amendment.

Testimony by Norman Saur, a Forensic [Anthropologist] relating to
identification of a thumb from a photograph, was brought by the
prosecution.  This testimony consisted of over 30% of prosecution's
case in chief, and was not in the first trial that ended in a hung jury
6-6.  The [appellate] court ruled <u>error</u> but harmless.

III.  Due Process by denial of Discovery which is [guaranteed] by the Fourteenth
Amendment.

Previous to trial, many motions were filed for discovery, specifically,
a computer hard drive.  All of which were denied.  An underlying
issue of Ineffective Assistance of Appellate Counsel was filed in the
Michigan Supreme Court for failing to properly brief and argue
appeal.

4

IV.     Due Process by admitting other acts evidence on rebuttal as guaranteed by the Fourteenth Amendment.

Prosecutor elicited a denial on cross examination, about knowledge of [child] pornography found at defendant's house.  Judge then allowed rebuttal testimony about pictures not discussed on direct examination or in prosecutor['s] case in chief.

*Id.* (docket no. 4) (emphasis in original).[2]

On April 11, 2006, the Court dismissed *Marchbanks I* without prejudice, because petitioner failed to exhaust his claim of ineffective assistance of appellate counsel.  *Id.* (docket nos. 7 and 8).  The Court advised petitioner that he had nearly nine months (until November 28, 2006) to pursue his unexhausted ineffective assistance of counsel claims in the state courts or, in the alternative, he could file a new petition at any time before the expiration of the limitations period raising only his exhausted claims.  *Id.*  The court determined that a stay of the proceedings to exhaust the new issue was not warranted.  *Id.*

On April 21, 2006, Marchbanks re-filed his petition in this action, challenging the convictions on the following grounds:

I.      Ineffective assistance of counsel as guaranteed by the Sixth Amendment.

Defense Counsel failed to object to damaging hearsay testimony by no less than four people.  These statements were supposedly about a conversation between complainant and the four testifying [witnesses] four to five months after the [alleged] crime.

II.     During trial, petitioner objected to expert testimony brought by the prosecution witness Norman Saur which denied Due Process as guaranteed by the Fourteenth Amendment.

---

[2] The expert witness is variously identified as "Norman Sauer" and "Norman Saur." The Michigan Court of Appeals' opinion refers to this witness as Norman Saur.  For purposes of consistency, this court will also refer to the witness as Norman Saur.

Testimony by Norman Saur, a Forensic Anthropolgist relating to identification of a thumb from a photograph, was brought by the prosecution.  This testimony consisted of over 30% of prosecution's case in chief, and was not in the first trial that ended in a hung jury 6-6.  The [appellate] court ruled error but harmless.

III.   Due Process by denial of Discovery which is guaranteed by the Fourteenth Amendment.

Previous to trial, many motions were filed for discovery, specifically, a computer hard drive.  All of which were denied.

IV.   Due Process by admitting other acts evidence on rebuttal as guaranteed by the Fourteenth Amendment.

Prosecutor elicited a denial on cross examination, about knowledge of [child] pornography found at defendant's house.  Judge then allowed rebuttal testimony about pictures not discussed on direct examination or in prosecutor['s] case in chief.

Docket no. 1.

On November 24, 2006, petitioner filed a motion to hold his habeas petition in abeyance.  *See* docket no. 37.  The court denied the motion, noting that petitioner had re-filed a habeas petition containing his exhausted claims and then commenced exhausting new claims in the state court.  *See* docket no. 45.  Then, on June 5, 2007, petitioner moved to add claims of ineffective assistance of appellate counsel in this action.  *See* docket no. 48.  The court denied this motion because it was contrary to the court's previous order denying the requested stay and abeyance.  *See* docket no. 50.  In addition, the court observed that the new claim of ineffective assistance of counsel remained unexhausted.  *Id.*

## II.     Procedural defaulted claims (Issues I and III)

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Petitioner's issues I and III are subject to procedural default because he failed to raise them in the manner required under state law.

The Michigan Court of Appeals rejected Issues I and III as abandoned on appeal. First, the appellate court rejected petitioner's ineffective assistance of counsel claim:

> Defendant first asserts that his trial counsel was ineffective because he failed to object to hearsay accounts by the victim to witnesses concerning the abuse. However, defendant failed to state how each statement was hearsay, failed to analyze any of the quoted statements in any detail, failed to discuss whether trial counsel was pursuing a legitimate trial strategy, and failed to explain how each statement prejudiced him. Defendant also failed to cite authority that directly supported his theory. The few authorities that defendant did cite were general authority for ineffective assistance claims. Defendant's cursory treatment of this issue warrants

7

the conclusion that defendant has abandoned this issue on appeal. *People v. Watson*, 245 Mich. App 572, 587; 629 NW2d 411 (2001).

*Marchbanks*, No. 252186, slip op. at 1.

Second, the appellate court found that petitioner's discovery claim was similarly abandoned:

> Defendant next contends that the trial court erred when it refused to grant his request for a copy of the hard drive and the removable media. We disagree.
>
> Defendant makes the unsupported assertion that he requested the production of the hard drive, which request was refused, and that the refusal denied him the opportunity to present a defense. Defendant again cited only to general authorities for the proposition that evidence requested by a defendant must be produced, but failed to address this issue specifically. In addition, defendant failed to address the timeliness of the requests, the fact that the trial court actually granted defendant permission to examine the requested materials on site, and completely failed to state how the limited discovery prevented him from putting on a defense. Therefore, defendant has abandoned this issue. *Watson*, *supra* at 587.

*Marchbanks*, No. 252186, slip op. at 2.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.*; *Strickland v. Washington*, 466 U.S. 668 (1984). However, ineffective assistance of counsel adequate to establish cause for the procedural default of some other

8

constitutional claim is itself an independent constitutional claim which can be procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Consequently, an ineffective assistance of appellate counsel claim can serve as the cause to excuse a petitioner's  procedural default on another claim only if the petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of appellate counsel claim itself.  *Lancaster v. Adams*, 324 F.3d 423, 438 (6th Cir. 2003)

The original petition in *Marchbanks I* was dismissed because it included unexhausted claims raising ineffective assistance of appellate counsel.  Petitioner did not take appropriate steps to exhaust his ineffective assistance of appellate counsel claims which could arguably be "cause" for the procedural defaults of Issues I and III.  Accordingly, petitioner has failed to demonstrate cause for his procedural defaults of these two issues.

Petitioner's failure to demonstrate cause prevents federal review of  Issues I and III unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  This exception to the procedural default doctrine is extremely limited.  "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court  "explicitly tied the miscarriage of justice exception to the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Thus, to meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted  to find him guilty beyond a reasonable doubt." *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000)  ("in order to establish actual innocence a petitioner must show that it

is more likely than not that no reasonable juror would have convicted him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.  Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted.

Petitioner has failed to meet the fundamental miscarriage of justice exception under *Coleman*.  Having failed to meet this exception, petitioner's Issues I and III are procedurally barred and not subject to habeas review.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner's remaining claims as set forth in Issues II and IV are exhausted and subject to federal habeas review.  Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### IV. Petitioner's habeas claims

### A. Trial court's admission of thumb identification evidence (Issue II)

Petitioner contends that the trial court improperly admitted evidence identifying his thumb as the thumb appearing in explicit photographs of the victim. Petitioner argues that Dr. Saur's testimony was pivotal, because his first trial, which did not include Dr. Saur's testimony, resulted in a hung jury. The Michigan Court of Appeals found that the testimony was improperly admitted, but constituted harmless error:

> Defendant next contends that he was deprived of a fair trial by the trial court's erroneous admission of the expert testimony of Norman Saur regarding the comparison of his thumb with the thumb in the explicit photographs of the victim. We disagree.

> A trial court's evidentiary decisions are reviewed for an abuse of discretion. *People v. Manser*, 250 Mich. App 21, 31; 645 NW2d 333 (2002). However, whether a rule or statute precludes admission of evidence is a matter of law and reviewed de novo. *People v. Lukity*, 460 Mich. 484, 488; 596 NW2d 607 (1999). Where, as here, the alleged error is a preserved nonconstitutional error, it will not warrant reversal unless the defendant demonstrates that the error resulted in a miscarriage of justice. *Id.* at 493-494. To demonstrate that the error resulted in a miscarriage of justice, the defendant must show that it is more probable than not that the error affected the

outcome of the trial. *Id.* at 495. While we agree that the trial court should not have admitted the expert testimony, we find that the testimony was of small consequence in light of the overwhelming evidence against defendant, and thus, the error did not affect the outcome and does not warrant a new trial.

*Marchbanks*, No. 252186, slip op. at 2.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Consequently, state court rulings on the admission of evidence are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial. *Clemmons*, 34 F.3d 352, 357-358 (6th Cir. 1994); *see Estelle*, 502 U.S. at 67-70. State court rulings cannot rise to the level of a due process violation unless they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (internal quotations and brackets omitted).

The issue for this court is whether this evidentiary error violated petitioner's federal due process rights. Petitioner contends that the admission of this evidence violated the Federal Rules of Evidence and that the trial court erred in admitting the evidence under the gate-keeping provisions of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Petitioner's contentions are without merit, because neither the Federal Rules of Evidence nor *Daubert* are relevant to the validity of petitioner's state court conviction. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) (agreeing with the district court that *Daubert* concerned the Federal Rules of Evidence and was not relevant to appellant's state conviction); *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994) (in reviewing habeas claim that the state court erred in allowing "forensic odontology" evidence in violation of *Daubert*, court found that *Daubert* does not purport to set a

12

constitutional floor on the admissibility of scientific evidence); *Anderson v. Jackson*, 567 F.Supp.2d 973, 983 (E.D. Mich.) (*citing Norris*).

Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)*, citing Estelle,* 502 U.S. at 69-70. In determining whether a trial error violated the constitution, the court must "evaluate whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Clemmons*, 34 F.3d at 357 *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007) (a federal court sitting in habeas review must assess the prejudicial impact of constitutional error in a state court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*). Thus, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. To determine the effect of a harmless error under *Brecht*, the court should consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial. *Peterson v. Warren*, -- F.3d --, 2009 WL 383730 at *7 (6th Cir. Feb. 17, 2009).

The key evidence in this case was the testimony of the victim, petitioner's daughter, who was ten years old at the time of the incidents and twelve years old at trial. Trial Trans. II at 22, 26, 38, 54.[3] The victim testified in detail regarding three instances in which petitioner photographed her nude, using his hands to spread both her buttocks cheeks and her vagina for the photographs.

_____

[3] Due to the nature of petitioner's habeas claim, it is necessary to recount the evidence in support of his convictions. In this case, which involves criminal sexual conduct, the evidence is graphic.

*Id.* at 38-58.  Petitioner told the victim that he took the pictures to sell on the internet; that he would

buy her whatever she wanted; and, that she would be taken to a foster home if she told anyone about

the pictures.  *Id*. at 42.  The victim testified that the pictures were taken with a camera that used a

disc instead of film, and that there were two of these cameras at her house.  *Id.* at 49.  The victim

testified that she could not concentrate at school because she was scared of petitioner.  *Id.* at 58.  The

victim would try to avoid him and stay with other children.  *Id.*

        The victim also testified that petitioner raped her on one occasion by inserting a

vibrator, his fingers and his penis in her vagina.  On that day, petitioner took the victim shopping

at Wal-Mart, where he suggested that she pick out some underwear.  *Id.* at 62-64.  When the victim

chose cotton underwear, petitioner told her that the "silky kind" would make her "feel older."  *Id.*

at 64-65.  That evening, while the victim's step-mother and her children were away from the house,

petitioner told the victim to come into his bedroom to watch television.  *Id.* at 65-66.  Petitioner shut

the bedroom door.  *Id.* at 66.  After about five minutes, petitioner told the victim to take off her

clothes, lock the door  and get "a pink vibrator."  *Id.* at 66-67.  Petitioner wore only a robe, which

he took off.  *Id.* at 67-68.  After the victim found the vibrator, he told her to lay down on the bed.

*Id.* at 69-70.  While the victim laid on her back, petitioner pushed the vibrator between the lips of

the vagina.  *Id.* at  70-72.  After he used the vibrator, petitioner tried to place three fingers, and then

two fingers, in the victim's vagina.  *Id.* at 72-74.  Petitioner succeeded in getting one finger inside

of the victim's vagina.  *Id.* at 74-75.  Then, petitioner succeeded in getting his penis "part way" in

her vagina.  *Id.* at 75-77.  The victim tried to scoot away from petitioner on the bed because she was

hurt and scared.  *Id.* at 77-78.  Petitioner also asked her to kiss his penis.  *Id.* at 78-79.  At this point,

the victim's brother came and asked for her.  *Id.* at 79.  Petitioner asked if she wanted to play with

her brother, the victim said yes, and he let her out. *Id.* at 80. The victim did not tell her brother, because she was scared of petitioner and his threats to send her to a foster home. *Id.* at 81.

The state also provided testimony from the victim's stepsisters, stepmother and biological mother regarding the victim's statements that petitioner photographed her, raped her and threatened to send her to a foster home. Trial Trans. II at 203-4; Trial Trans. III at 49-52; Trial Trans. IV at 15-17. The victim first told her step-mother (Lisa) about petitioner in the course of a discussion involving the victim's problem with homework. Trial Trans. II at 83-84. The victim started crying, and Lisa asked if petitioner ever hurt her. *Id.* at 84-85. The victim told Lisa about the pictures and what petitioner did to her. *Id.* at 85-86. After that, Lisa made sure that the victim's step-sisters were around the victim all of the time. *Id.* at 88. Trial Trans. II at 204-5. At trial, the victim identified the locations of the pictures, as well as petitioner's thumb, which appeared in some of the pictures. *Id.* at 93-99, 153-54.

The state produced copies of the victim's nude pictures taken from the hard drive of one of petitioner's computer's. Trial Trans. III at 166-213. Lisa testified that petitioner kept computers and devices related to the computers in his office, that he was the only person allowed in the office, and that he was always on the computer. *Id.* at 24-27. One of the victim's stepsisters testified that the children were not allowed in petitioner's office and that they would be punished if caught in there. Trial Trans. II at 204-5. Lisa found discs in petitioner's office marked "KPICS" or "KIDPICS" which included two or three pictures of the victim partially dressed. Trial Trans. III at 35-36. The victim's biological mother reported the incidents to the Cass County Sheriff in May 2002. Trial Trans. IV at 17-19.

The prosecution presented four experts in support of its case. Dr. James Henry, an expert in the field of child sexual abuse testified that delayed disclosure of the abuse, a decline in

15

grades, lack of chronology in traumatic events and the grooming of child by an adult before attempted penetration are typical occurrences in cases of child abuse.  Trial Trans. II at 167-84; Trial Trans. VII at 178.  Colleen Auer, a Michigan State Police crime laboratory expert in the field of computer forensics, analyzed petitioner's hard drive and found photographs of the victim categorized by subject matter.  Trial Trans. III at 166-213; Trial Trans. VII at 178.  Richard Cruz, a detective sergeant at the Michigan State Police and an expert in the field of computer forensics, testified to a discrepancy on the date and time listed on petitioner's computer.  Trial Trans. VI at 7-9; Trial Trans. VII at 179.  Finally, the prosecution presented Dr. Saur, an expert in the field of forensic anthropology, to testify regarding the similarities between petitioner's thumb and the thumb depicted in the photgraphs. Trial  Trans. VII at 179.

Dr. Saur testified that he could not exclude petitioner's thumb as the one depicted in the photographs and pointed to a number of consistencies between petitioner's thumb and the thumb in the photographs.  Trial Trans. V at 48-54.  Dr. Saur summarized his testimony as follows:

> I am not saying with certainty this is Gary Marchbanks' thumb.  I am saying that there are a number of consistencies, and we cannot exclude him.

*Id.* at 54.  In addition, Dr. Saur testified that he could exclude other family members from the photographs.  *Id.* at 73.  Defense counsel subjected Dr. Saur to considerable cross-examination and re-cross-examination on his methodology and findings. *Id.* at 74-90, 101-38, 146-56.  In closing argument, the prosecutor briefly summarized Dr. Saur's testimony, observing that the doctor could not say with certainty that it was petitioner's thumb on the  photograph, but that "he was able to exclude everyone else," and "that he was able to find consistencies showing that that thumb was consistent with the thumb of the defendant's on a number of areas, including the lunula."  Trial Trans. VII at 113.

During the jury instructions the court identified the four expert witnesses in the case: Dr. James Henry (expert in the field of child sexual abuse); Colleen Auer (expert in the field of computer forensics); Dr. Saur (expert in the field of forensic anthropology); and Richard Cruz (expert in the field of computer forensics). *Id.* at 178-79. The judge gave the following instruction to the jury regarding the evaluation of expert witness testimony:

> Experts are allowed to give opinions in court about matters they are experts on. However, you do not have to believe an expert's opinion. Instead, you should decide whether you believe it and how important you think it is.
>
> When you decide whether you believe an expert's opinion, think carefully about the reasons and the facts that they gave for their opinion, and whether those facts are true. You should also think about the expert's qualifications and whether their opinion makes sense when you think about the other evidence in the case.

*Id.* at 179.

The court concludes the overall evidence against petitioner in this case was strong. The victim gave extensive and graphic testimony. Dr. Henry's opinion testimony could establish that the victim's actions in reporting the incident was consistent with actions taken by other young victims. Ms. Auer linked petitioner's computer with the photographs. Other family members testified about the exclusive and secretive nature in which petitioner maintained his office, which would be consistent with the victim's testimony. Lisa testified that she found a disc in petitioner's office containing photographs of the victim.

The Dr. Saur's testimony supported the victim's testimony that petitioner's thumb appeared in the photographs. In this regard, Dr. Saur did not purport to identify petitioner's thumb as the one depicted in the photographs, but testified that he could not exclude petitioner's thumb from the photographs. In addition, the court instructed the jury that they did not have to believe the opinion of any of the experts. Given this other evidence, the admission of Dr. Saur's testimony did

not have such a substantial impact on the jury as to deny petitioner a fundamentally fair trial.  The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

> **B.    Trial Court's admission of MRE 404(b) evidence and due process violation  (Issue IV)**

Finally, petitioner contends that the trial court improperly admitted evidence of other bad acts in violation of MRE 404(b) (a catalog of child pornography photographs on his computer hard drive) and further allowed rebuttal testimony on that issue from Detective Kristin Daly.

> **1.    Plain error review by the Michigan Court of Appeals**

Petitioner first raised this MRE 404(b) issue in his pro se supplemental brief on appeal.  As a general rule, this issue would be subject to the procedural default doctrine for purposes of federal habeas review, because the Michigan Court of Appeals found that the error was not preserved and performed a plain error review.   "[A] state court's plain error analysis does not save a petitioner from procedural default.  Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted). *See Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).

However, despite the Michigan Court of Appeals' finding, the record reflects that during petitioner's cross-examination, his counsel objected to the introduction of evidence that petitioner possessed other pornography as violating MRE 404(b). Trial Trans. VI at 161-72.  The

18

court allowed testimony from Detective Kristin Daly to rebut petitioner's testimony that he had no knowledge of the over 100 pictures of nude children (which included girls having sex with men) on his computer hard drive. Trial Trans. VI at 160, 172-83; Trial Trans. VII at 49-50, 56-78. The parties' stipulated to the admission of government's exhibit no. 70, which contained a compilation of information taken off of petitioner's computer hard drive (exhibit no. 26) and discs of suspected child pornography (exhibit no. 8). Trial Trans. VII at 55-56. After the admission of exhibit 70, Detective Daly testified that the exhibit contained summary information about various photographs stored on the computer's hard drive. Trial Trans. VI at 55-56.

Given this history in the trial court, it is unclear whether this issue is subject to procedural default analysis on federal habeas review. Since respondent did not treat this habeas issue as being procedurally defaulted, rather than perform a procedural default analysis, the court will review the merits of petitioner's claim. "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997). *See also*, *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case); *Johnson v. Warren*, 344 F. Supp.2d 1081, 1089 (E.D. Mich 2004) (given complexity of determining procedural default, court addressed claims on the merits). *Cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

### 2. "Other bad acts"

The Michigan Court of Appeals concluded that the trial court properly admitted this evidence:

Defendant next contends that the evidence of the other pictures found on his hard drive and the discs should have been excluded under MRE 404(b). We disagree.

Defendant's trial counsel addressed his objections to the trial court and the trial court dealt with these objections at length, but defendant's trial counsel objected only on the ground that the rebuttal was improper and not under MRE 404(b). An objection on one basis does not preserve appellate review based upon another basis. *People v. Maleski*, 220 Mich.App 518, 523; 560 NW2d 71 (1996). Therefore the issue was not properly preserved for review. Because defendant failed to preserve this issue, this Court will review it for plain error affecting defendant's substantial rights. *People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999).

MRE 404(b)(1) prohibits the admission of evidence that a defendant committed other crimes, wrongs, or acts, "to prove the character of a person in order to show action in conformity therewith." However, other acts evidence can be admitted under certain circumstances. Our Supreme Court has held that there must be three factors present for other act evidence to be admissible. *People v. Knox*, 469 Mich. 502, 509; 674 NW2d 366 (2004). First, the prosecutor must offer the prior bad acts evidence under something other than a character or propensity theory. Second, the evidence must be relevant under MRE 402 and MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. *Id.* (citations omitted).

Even if the evidence of the pictures on the computer could be said to be evidence of other bad acts by defendant by inference, the rebuttal exhibit and testimony were not offered for the impermissible purpose of demonstrating that defendant had bad character and that he should be convicted based upon the belief that he acted in conformity with that behavior. *See People v. VanderVliet*, 444 Mich. 52, 69-70; 508 NW2d 114 (1993); *People v. Starr*, 457 Mich. 490, 496; 577 NW2d 673 (1998). The statements and exhibit were offered to rebut the statements by defendant that he did not know there was any child pornography on the computer, that he was unfamiliar with the labels of the pictures of his daughter, and that he did not download, view, or get aroused by pictures of child pornography. The testimony and exhibit also clarified the nature of the evidence on defendant's computer and tended to rebut defendant's theory of the case that he was framed. *See Starr*, *supra* at 501-502. Furthermore, when defendant testified, he placed his credibility at issue, and such rebuttal testimony and evidence became fair game. *Lukity*, *supra* at 498-499. Thus, the evidence was clearly offered for a purpose other than to prove that defendant acted in conformity with his bad character.

Likewise, the evidence was relevant. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. The evidence of more than 170 child pornographic

20

photographs on his computer was probative that defendant knew or should have known that there were such pictures on his computer, and thus lied when he stated otherwise. In addition, the evidence of the labels undermines defendant's statements that he did not understand the labels used with the obscene pictures of his daughter and thus undermines the credibility of his denial that he took the pictures or even was aware of them. The evidence also tended to corroborate the victim's statement that defendant intended to sell the photographs on the internet, because it tended to show that defendant knew how to download and upload child pornography and was aware of its commercial value. Therefore, the evidence was clearly both relevant in its own right and proper rebuttal evidence.

Defendant also asserts that the evidence was highly prejudicial and should have been barred under MRE 403. MRE 403 bars the admission of evidence where the probative value is substantially outweighed by the danger of unfair prejudice. *Starr*, *supra* at 499. In this case, the trial court determined that the evidence was relevant and had significant value, but that the value was outweighed by the prejudicial nature of the photographs themselves. As a result, the trial court barred the admission of the photographs, but permitted the admission of the fact that there were such photographs and the admission of the labels and other technical information. The admission of the very limited testimony by Daly and an exhibit listing the titles and technical information about a series of photographic files stored on electronic media, including their labels, is far less prejudicial than the actual photographs, and considering the important evidentiary value already noted, cannot be said to be so prejudicial that the prejudicial value outweighed its probative value and thus warranted its exclusion. Therefore, the trial court did not err in permitting this evidence to be admitted.

*Marchbanks*, No. 252186, slip op. at 3-4.

State court rulings on the admission of evidence are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial. *See Clemmons*, 34 F.3d at 357-358. The Michigan Court of Appeals found that the trial court properly admitted this "other acts" evidence (i.e., exhibit no. 70 and Daly's testimony) to rebut plaintiff's testimony regarding his unfamiliarity with child pornography. Even if the trial court had committed error in admitting this evidence, the admission of other acts evidence does not implicate a federal constitutional right. "There is no clearly established Supreme Court precedent which holds that a state violates due

21

process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d

at 512.   Petitioner's claim should be denied.

**V.      Recommendation**

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules

Governing § 2254 Cases in the United States District Courts.


Dated:  May 5, 2009                          /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge




ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with
the Clerk of the Court within ten (10) days after service of the report.  All objections and responses
to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written
objections within the specified time waives the right to appeal the District Court's order.  *Thomas
v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).